UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | |
| ) | Bankruptcy Case |
| CHARLES JEFFREY HANLON, ) | No. 15-64121-tmr7 |
| ) | |
| Debtor. ) | |
| ) | |
| PEGGY A. SATO, ) | Adversary Proceeding |
| ) | No. 16-6040-tmr |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CHARLES JEFFREY HANLON, ) | MEMORANDUM OPINION |
| ) | |
| Defendant. ) | |

Plaintiff filed the instant adversary complaint seeking to except a state court judgment from discharge under 11 U.S.C. § 523(a)(15).[1] The matter before the Court is Defendant's motion to dismiss. After briefing and oral argument, the matter is ripe for decision.

<u>FRCP 12(b)(6) Standards:</u>

Defendant's motion is brought under FRCP 12(b)(6) (made applicable by FRBP 7012(b)) for failure to state a claim upon which relief can be granted. Under FRCP 12(b)(6), the court must accept as true all well-pleaded allegations contained in the complaint, but it need not accept as true "conclusory statements,

---

[1]Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

MEMORANDUM OPINION-1

statements of law, or unwarranted inferences cast as factual allegations." Taylor v. U.S. Dep't of Justice (In re Taylor), 2012 WL 1957984, *2 (9th Cir. BAP May 31, 2012) (internal quotation omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotations omitted). In ruling on a Rule 12(b)(6) motion, the court must draw all reasonable inferences in the plaintiff's favor. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).

> In considering the [Rule 12(b)(6)] motion, the court may not consider any material beyond the pleadings. . . . [However], a document whose contents are alleged in the complaint, or which is crucial to the complaint, and whose authenticity no party questions, but which is not physically attached to the pleading, may be considered. Finally, matters that may be judicially noticed may be considered, including court records in related or underlying cases.

McCoy v. BNC Mortg., Inc. (In re McCoy), 446 B.R. 453, 456 (Bankr. D. Or. 2011) (internal citations and quotations omitted).[2]

The Allegations:

Slightly paraphrased, the Complaint, including the exhibits attached to counsel's Declaration, allege the following:

Plaintiff and Defendant are of the opposite sex and cohabited for a lengthy period, during which time they established a common-law domestic partnership. They did not seek to register their domestic partnership under Oregon law.

// // //

// // //

// // //

---

[2] Plaintiff's Opposition to the present Motion is supported by her counsel Mark Comstock's Declaration authenticating several exhibits consisting of documents from the state court case. At oral argument, Defendant agreed those exhibits may be considered in resolving the Motion.

MEMORANDUM OPINION-2

On or about January 31, 2013, Defendant (as Petitioner) filed a "Petition for Dissolution of a Domestic Partnership" against Plaintiff (as Respondent) in Marion County Circuit Court.[3] The Petition alleged the parties' domestic partnership had ended and prayed that it be dissolved and that the parties' real and personal property be divided "in a just and equitable manner." Ex. 2 to Comstock Declaration.

During the dissolution proceeding, Plaintiff/Respondent served discovery requests. After several instances of Defendant/Petitioner's non-compliance, and on Plaintiff/Respondent's motion, the court on or about April 8, 2015, entered an Order granting discovery sanctions. The sanctions included striking Defendant/Petitioner's pleadings, granting judgment by default (to be entered separately), and awarding Plaintiff/Respondent her reasonable attorney fees using the procedures set forth in ORCP 68.

On or about April 8, 2015, a "General Judgment By Default" was entered against Defendant/Petitioner. On or about May 26, 2015, a Supplemental Judgment was entered awarding Plaintiff/Respondent attorney fees and costs of $41,933, to bear interest at 9% per annum from the date of the Judgment's entry.

Defendant filed his Chapter 7 petition on December 16, 2015.

Discussion:

As asserted by Plaintiffs the applicable statute is § 523(a)(15) which provides an exception to a Chapter 7 discharge for "any debt":

> to a <u>spouse</u>, <u>former spouse</u>, <u>or</u> <u>child</u> <u>of the debtor</u> and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit. (Emphasis added.)

Statutorily Designated Payees:

---

[3]The Complaint alleges the Petition was filed "under ORS Chapter 106." Complaint at ¶ 6. The actual Petition is attached to Comstock's Declaration as Exhibit 2. Nowhere therein is ORS Chapter 106 cited. As discussed below, the applicable provisions of ORS Chapter 106 concern same-sex couples only. As such, the Court cannot infer the Petition was filed under Chapter 106 and is thus treating Plaintiff's allegation as a legal conclusion which need not be taken as true. <u>Taylor</u>, 2012 WL 1957984, at *2. The Complaint further quotes ORS 106.340(1), Complaint at ¶ 9, which, as discussed below, gives registered domestic partners the same privileges as married persons. By inference, Plaintiff is alleging ORS 106.340(1) applies to her, again a conclusion of law which the Court need not accept as true.

MEMORANDUM OPINION-3

As noted, the debt must be owed to a "spouse, former spouse, or child of the debtor." For ease of reference, the Court will refer to those parties as "designated payees." Defendant argues Plaintiff is not a designated payee, and thus no cause of action lies. Plaintiff argues the designated payees are merely "prefatory" and that the real inquiry is whether or not the debt was incurred in the type of proceeding enumerated in the statute.

Plaintiff is correct but only to a point. Indeed, the caselaw has widened recovery to non-designated payees. Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1141 (9th Cir. 1998). In Chang, the debts were owed to a court-appointed guardian ad litem and to the father of the debtor's out-of-wedlock child. Neither the guardian nor the father fits strictly into the designated payees under the former version § 523(a)(5), which excepted support debt from discharge.[4] Nevertheless, the Court allowed them to pursue their claims, reasoning "the identity of the payee is less important than the nature of the debt." Id. Since then, and drawing from Chang's holding, non-designated payees have been permitted claims under either § 523(a)(5) or (15) when the bounty of the debt flowed to, or if discharge of the debt would adversely impact the finances of, a designated payee. Bendetti v. Gunness (In re Gunness), 505 B.R. 1, 6 (9th Cir. BAP 2014).

Plaintiff cannot take advantage of the above line of authority. It applies to third persons having connection to a designated payee. Plaintiff is not a such a third person. She simply wants the Court to carve out an exception to the named class of designees or extend the meaning of "spouse." Gunness, however, emphasized that the class of designated payees is to be narrowly construed. Id. at 7-8. There, the court refused to extend § 523(a)(15) protection to the debtor's husband's ex-wife and the ex-wife's attorney, holding prior precedent would not "in any way . . . support our imputing a familial relationship between two unrelated parties." Id. at 7. Thus, § 523(a)(15)'s designated payees are far from "prefatory"; they are in fact crucial in determining who qualifies under the statute.

---

[4] When Chang was issued, § 523(a)(5) listed the same designated payees as current § 523(a)(15). It now simply incorporates the definition of "domestic support obligation" in § 101(14A), which expanded the class of designated payees.

MEMORANDUM OPINION-4

Plaintiff cites <u>Francis v. Wallace (In re Francis)</u>, 505 B.R. 914 (9th Cir. BAP 2014) in support of her argument. There, the court held the debtor's obligation under his stipulated divorce decree to pay certain creditors, and hold his ex-wife harmless therefrom, fit within § 523(a)(15) even though the debtor's obligation was to pay the creditor instead of his ex-wife directly. The court noted that California law allowed the ex-wife to obtain an order compelling such payment, and that, in any event, the debtor had impliedly agreed to indemnify her, both of which formed the basis for the debtor owing a "debt" to the ex-wife. <u>Id.</u> at 921-922. The opinion did not recognize any right of the third party creditors themselves to sue debtor directly under § 523(a)(15), and can in no way be read to open up the class of permissible payees to those with no connection to the statute's designated payees.

<u>Plaintiff's Status</u>:

In light of the foregoing, the Court's inquiry is confined to whether Plaintiff was Defendant's "spouse." The Bankruptcy Code does not define that term. Until fairly recently the "Defense of Marriage Act" (DOMA) defined "spouse" for purposes of all federal statutes, as "only . . . a person of the opposite sex who is a husband or wife." 1 U.S.C. § 7. However, in 2013, DOMA was ruled unconstitutional. <u>United States v. Windsor</u>, 510 U.S. __, 133 S. Ct. 2675, 2693, 2695-2696 (2013) (surviving spouse of legal same-sex marriage was entitled to the Internal Revenue Code's marital exemption for estate tax purposes).

Post-<u>Windsor</u>, most bankruptcy courts have looked to state law for the definition of "spouse" as used in the Bankruptcy Code. <u>See, e.g.,</u> <u>In re Cusimano</u>, 2013 WL 9736597, *2 (Bankr. C.D. Cal. Nov. 12, 2013) (California law defined "spouse" for purposes of § 523(a)(15)); <u>In re Matson</u>, 509 B.R. 860, 863 (Bankr. E.D. Wisc. 2014) (state law where marriage ceremony is performed controls for purposes of eligibility to file a joint petition under § 302(a)).[5] One court, however, still reasoned the definition of "spouse" was a matter of federal law, and examined the dictionary's ordinary meaning of that term. <u>In re Villaverde</u>, 540 B.R. 431, 434 (Bankr. C.D. Cal. 2015). Because the dictionary simply defined "spouse" as a husband, wife and/or married person, the court ultimately looked to state (there, California) law to determine if the debtors fit

---

[5] Section 302(a) provides "[a] joint case under a chapter of this title is commenced by the filing . . . of a single petition under such chapter by an individual that may be a debtor . . . and such individual's spouse."

MEMORANDUM OPINION-5

within those terms. Thus, even if this Court were to begin with the dictionary, it would eventually look to Oregon law in defining "spouse" for purposes of § 523(a)(15).

The Complaint's allegations indicate Plaintiff and Defendant never participated in a solemnized marriage ceremony, as required by ORS 106.010, 106.150(1).[6] Therefore, and because Oregon does not recognize common-law marriage, Huard v. McTeigh, 113 Or. 279, 295-296, 232 P. 658, 663 (1925); Johnston v. Georgia-Pac. Corp., 35 Or. App. 231, 233, 581 P.2d 108, 109 (1978), Plaintiff would not be considered a "wife" or a "spouse" under Oregon law. At most she would be a common-law "domestic partner" which would entitle her to a distribution of property according to the parties' express or implied intent, which may, under certain circumstances, require distribution according to equitable principles. See Baker and Andrews, 232 Or. App. 646, 651-652, 223 P.3d 417, 420-421 (2009).

Contrary to Plaintiff's conclusory argument, the Court could find no authority which holds that common-law domestic partners are "married" or qualify as each other's spouses. In fact, the caselaw is directly to the contrary. See, e.g., Beal v. Beal, 282 Or. 115, 117-118, 577 P.2d 507, 507-508 (1978) (describing domestic partners' relationship as "meretricious" not marital, and concluding the parties were never husband and wife); Himler and Katter, 220 Or. App. 411, 417, 186 P.3d 287, 291 (2008) (distinguishing a domestic partnership from a marriage).

Plaintiff cites Latham v. Latham, 274 Or. 421, 547 P.2d 144 (1976) for support. However, its holding goes nowhere near so far as to hold unmarried cohabiting partners should be treated as married. The court there merely held that a contract whereby one unmarried person agrees to split property equally in consideration of the other cohabiting with him/her while engaging in the burdens and activities of married life is not void as against public policy. Id. at 427, 547 P.2d at 147.

---

[6]To the extent ORS 106.010 and 106.150(1) prohibit same-sex marriages, they, as well as OR. CONST., art. XV, § 5a which defined marriage as solely between a man and a woman, are unconstitutional. Obergefell v. Hodges, 576 U.S. __, 135 S. Ct. 2584, 2604-2605 (2015); Geiger v. Kitzhaber, 994 F. Supp. 2d 1128, 1147 (D. Or. 2014). Geiger invalidated Oregon's statutory and constitutional prohibitions on same-sex marriage. Obergefell invalidated any state law which prohibited same-sex marriage or which failed to recognize the legality of a same-sex marriage solemnized in another state.

MEMORANDUM OPINION-6

Despite the above authority, Plaintiff argues that, because Defendant took the position in the state court dissolution suit that he was Plaintiff's domestic partner, he should be judicially estopped from arguing here that he was not her partner and/or that he was not her spouse. Plaintiff's judicial estoppel argument is a red herring. In limited circumstances, a party or the Court may invoke that doctrine to bar a party from gaining an advantage by maintaining a position that is inconsistent with a position in an earlier judicial proceeding. Ah Quin v. Cnty. of Kauai Dep't of Transp., 733 F.3d 267, 270-271 (9th Cir. 2013). Barring Defendant from maintaining a position, however, is not the Court's focus at this stage of the proceeding. Rather, its focus is on what Plaintiff has pled and whether, giving her all reasonable inferences, she has stated a claim upon which relief can be granted. Plaintiff has complete control over what is pled, with the limitation that the Court need not accept legal conclusions as true. At best, the Complaint and associated exhibits allege Plaintiff was Defendant's domestic partner, and legally concludes she has the rights of a registered domestic partner, a subject the Court turns to next.

As background:

> In May 2007, the Oregon Legislative Assembly passed the Oregon Family Fairness Act [**FFA**], which is now codified at ORS 106.300. The Act established a domestic partnership system which provides legal recognition to same-sex relationships and which is intended to ensure more equal treatment of gays and lesbians and their families under Oregon law. ORS 106.305(6).
>
> Two individuals of the same sex who are at least eighteen, who are otherwise capable, and at least one of whom is an Oregon resident, may register to become domestic partners with the county clerk. ORS 106.310(1); ORS 106.325. They may do so by filing a Declaration of Domestic Partnership with the county clerk. ORS 106.325. The county clerk makes the forms of those declarations available to the public. ORS 106.320(2). The county clerk registers the declaration and returns a Certificate of Registered Domestic Partnership to the registrants. ORS 106.325. The county clerk also collects a fee which is turned over to the state. Registering as domestic partners ensures the partners certain rights, privileges, benefits and immunities. ORS 106.340. The domestic partnership law was intended to go into effect January 1, 2008, but because of a court challenge, did not go into effect until February 4, 2008.

Slater v. Douglas Cnty., 743 F. Supp. 2d 1188, 1190 (D. Or. 2010) (bracketed highlighted text added).

// // //

// // //

MEMORANDUM OPINION-7

The FFA was enacted to give same-sex couples the rights and responsibilities equivalent to those of married couples, ORS 106.340(1),(2),[7] because same-sex couples could not then legally marry because of (now unconstitutional) section 5a, Article XV of the Oregon Constitution, which limited marriage to opposite-sex couples. ORS 106.305(1)-(7). Plaintiff argues that, with the legalization of same-sex marriage, same-sex and opposite-sex domestic partners are now similarly-situated and the FFA's grant of marriage rights equivalency to the former discriminates against the latter, in violation of the privileges and immunities clause of the Oregon Constitution[8] and the equal protection clause of the 14th Amendment to the U.S. Constitution.[9] She asks the Court to open up the rights attendant to a registered domestic partnership (**RDP**) to opposite-sex couples, and then apply those rights in the context at bar. To buttress her argument,

---

[7]ORS 106.340(1),(2) provide:

> (1) Any privilege, immunity, right or benefit granted by statute, administrative or court rule, policy, common law or any other law to an individual because the individual is or was married . . . is granted on equivalent terms, substantive and procedural, to an individual because the individual is or was in a domestic partnership . . . .
>
> (2) Any responsibility imposed by statute, administrative or court rule, policy, common law or any other law on an individual because the individual is or was married . . . is imposed on equivalent terms, substantive and procedural, on an individual because the individual is or was in a domestic partnership . . . .

Registered domestic partners are also given the same rights of spouses concerning a child of either of the partners. ORS 106.340(3),(4).

The above provisions incorporate by reference a multitude of statutes governing married persons (including ORS Chapter 107 as to dissolution) that are simply inapplicable to common-law domestic partnerships. This makes clear that a registered domestic partnership and a common law domestic partnership are not the same animal. In fact, they are barely the same genus.

[8]Oregon's Constitution provides that "[n]o law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens. OR. CONST. art. I, § 20.

[9]The 14th Amendment prohibits any state from denying "to any person . . . the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

MEMORANDUM OPINION-8

presumably to show she and Defendant were similarly situated to unmarried same-sex couples, Plaintiff first asks the Court to construe the RDP scheme to include <u>un</u>registered same-sex couples.

ORS 106.325(1) provides that "[t]wo individuals wishing to become partners in a domestic partnership may complete and file a Declaration of Domestic Partnership with the county clerk." Plaintiff argues the term "may" indicates registration is optional. In construing a statute, the Court must determine the legislature's intent, ORS 174.020(1)(a); <u>State v. Gaines</u>, 346 Or. 160, 164, 206 P.3d 1042, 1046 (2009), and in doing so must first examine the statute's text and context. <u>Id.</u> at 171, 206 P.3d at 1050. "Statutory context includes other provisions of the same statute and . . . and the statutory framework within which the statute was enacted." <u>Fresk v. Kraemer</u>, 337 Or. 513, 520–521, 99 P.3d 282, 286 (2004).

Plaintiff's argued construction ignores ORS 106.325(1)'s introductory phrase limiting the universe of persons completing and filing a Declaration of Domestic Partnership to those "wishing to become partners." It also ignores ORS 106.325(5) which sets forth the necessary contents of the Declaration for "each individual who <u>wants to</u> become a partner in a domestic partnership." (Emphasis added). <u>See Alfieri v. Solomon</u>, 358 Or. 383, 408, 365 P.3d 99, 113 (2015) (statutes should be construed to give effect to all their provisions). Further, the legislature has expressly stated it is the RDP scheme, (i.e., "ORS 106.300-106.340"), <u>which includes registration,</u> which "extend[s] benefits, protections and responsibilities to committed same-sex partners," ORS 106.305(5), and which composes a "system" to "provide legal recognition to same-sex relationships." ORS 106.305(6). Finally, ORS 106.325(3) prohibits domestic partnership declarants from entering into a new domestic partnership until their most recent partnership has been annulled or dissolved by judgment (or upon death of one of the partners), further evidencing the legislature's intent that only those who declare and register are entitled to the benefits the law provides. All of these statutes make clear that registration is required to gain the privileges of the RDP scheme. <u>See generally</u> <u>Slater</u>, 743 F. Supp. 2d at 1190.

Plaintiff nevertheless argues ORS 106.310(1) is unconstitutional, and should thus be expanded to same-sex couples. However, to have standing to mount a retrospective equal protection challenge, Plaintiff must plead and prove that she suffered a particularized injury, i.e., she was personally denied equal

MEMORANDUM OPINION-9

treatment, Braunstein v. Ariz. Dep't of Transp., 683 F.3d 1177, 1185 (9th Cir. 2012), which at minimum would appear to require allegations and proof that she and Defendant were prepared to register, and/or attempted to register, but for the law's prohibition. Likewise, for a privileges and immunities challenge, it appears Plaintiff must plead and prove that she and Defendant would have registered had the law allowed. Madrone and Madrone, 271 Or. App. 116, 127-128, 350 P.3d 495, 500-501 (2015). No such allegation appears in the Complaint. Further, at no point so far has Plaintiff argued she and Defendant would have registered had they been permitted to do so. These failings would appear to be fatal to Plaintiff's standing on these claims.

Further, as stated, Plaintiff's injury must have involved denial of equal treatment, Braunstein, 683 F.3d at 1185 (equal protection clause), and/or denial of a privilege or immunity, State v. Scott, 96 Or. App. 451, 455, 773 P.2d 394, 396 (1989) (privilege and immunities clause), within the relevant time-frame. The purpose of the RDP statutes was to enable people who could not then get legally married to have the rights of married persons. ORS 106.305(1)-(7). It set up no barriers for opposite-sex couples to gain those rights the old-fashioned way, that is, by actually getting married. As such, the Court has serious doubts whether Plaintiff suffered an injury so as to have standing.

Finally, there is an issue as to whether Plaintiff is now precluded from mounting a constitutional challenge because she did not do so in the now-completed dissolution suit.

Despite such doubts and lingering threshold issues, the Court is not at this juncture prepared to rule on the constitutional challenge because, as Plaintiff admits, she has not complied with FRCP 5.1 (incorporated by FRBP 9005.1), and LBR 9005-1.1, which set out the procedures to give Oregon's Attorney General an opportunity to intervene on the constitutional issue.[10] Therefore, Plaintiff will have (fourteen) 14

---

[10]Even assuming *arguendo* that Plaintiff is entitled to RDP rights, an issue remains whether they would equate to those of a "spouse" for purposes of § 523(a)(15). The Court is aware of the general maxim that cases should be decided on non-constitutional bases if possible. Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 584, 72 S. Ct. 863, 865 (1952). However, given that the law on RDP status under the Bankruptcy Code appears unsettled, compare Cusimano, 2013 WL 9736597 at *2-3 (registered domestic partner under analogous California scheme is a "spouse" for purposes of § 523(a)(15)), with Villaverde, 540

(continued...)

MEMORANDUM OPINION-10

days from entry of this opinion to comply with the applicable Rules, absent which she will be deemed to have abandoned her constitutional challenge and/or it will be stricken for failure to prosecute. If the challenge is abandoned and/or stricken, an order will be entered granting Defendant's motion, and judgment will be entered dismissing the Complaint with prejudice, and awarding Defendant his reasonable costs and disbursements under FRBP 7054(b)(1), to be determined in supplemental proceedings under LBRs 7054-1, 9021-1(d).

This Opinion constitutes the Court's findings of fact and conclusions of law under FRBP 7052.

THOMAS M. RENN
Bankruptcy Judge

---

[10](...continued)
B.R. at 436 (registered domestic partner under California scheme not a "spouse" for purposes of § 302(a)), the Court surmises that the apparent threshold (and dispositive) defects to Plaintiff's constitutional challenge may be more expeditiously resolved.

MEMORANDUM OPINION-11